IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICK FIEDLER,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.:** |
| | § | **1:21-cv-393** |
| v. | § | |
| | § | **JURY DEMAND** |
| **ROB'T J. BAGGETT, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

**I.   INTRODUCTION**

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights and violations of the Americans with Disabilities Act, Title 42 U.S.C. § 12101 *et seq.*, (hereinafter "ADA"); and violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601, *et seq*. The Plaintiff seeks compensatory, punitive, and liquidated damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

**II.   JURISDICTION AND VENUE**

2. Plaintiff believes that this Court has jurisdiction in accordance with 28 U.S.C. § 1331, 29 U.S.C. §2617, 28 U.S.C. § 2201 and 2202, 29 U.S.C. § 794a, and 42 U.S.C. § 12133.

3. The unlawful employment practices alleged hereinbelow were committed by the defendant within Mobile County, Alabama.   Venue is proper pursuant to 28 U.S.C. § 1391and 42 U.S.C. § 2000e-5(g).

4. Plaintiff has fulfilled all conditions precedent to the institution of this action including those statutory requirements under the ADA.  Plaintiff timely filed his Charge of

Discrimination with the Equal Employment Opportunity Commission on August 12, 2019, and within 180 days of occurrence of the last discriminatory act. Plaintiff also timely filed this Complaint within ninety (90) days of the receipt of a Notice of Right To Sue issued by the Equal Employment Opportunity Commission.

### III.     PARTIES

5.      Plaintiff, Rick Fiedler (hereinafter "Plaintiff" or "Fiedler"), is a male citizen of the United States and a resident of the State of Alabama.

6.      Plaintiff was an eligible employee under the FMLA in that he worked for the Defendant for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed.

7.      Plaintiff is also a qualified individual under the Americans with Disabilities Act in that he suffers from a medical condition which substantially limits one or more of his major life activities, and/or is perceived as having a disability which substantially limits his major life activities, and/or has a history of having such disabilities. 42 U.S.C. § 12102, 42 U.S.C. § 12131, 29 U.S.C. § 706.

8.       Defendant, Rob't J. Baggett, Inc., (hereinafter "Baggett" or "Defendant"), is a corporation doing business in Mobile County, Alabama, where at all times relevant to this action the defendant has employed at least fifteen (15) or more employees.

9.      The Defendant is an employer pursuant to 42 U.S.C. § 12111(5); an employer within the meaning of 42 U.S.C. § 2000e(a) and (b); and is a covered employer pursuant to 29 U.S.C. §2611(4).  At all times relevant to this action the defendant has employed at least fifteen (15) or more employees.

10. The Defendant employed 50 or more employees for each working day during each of the 20 or more calendar work weeks in the applicable calendar year.

## IV.   FACTUAL ALLEGATIONS

11. Plaintiff initially worked for Rob't J. Baggett, Inc., from approximately 1996-2003.

12. Plaintiff returned to work for the company on or about February 3, 2010, and remained employed for over ten (10) years until his unlawful termination on or about April 15, 2020.

13. During the Plaintiff's most recent employment with the company he was an Administrative Assistant wherein he performed multiple duties including assisting the Office Manager, handling equipment rentals, billing clients, purchasing, and handling progress reports of projects and other various reports.

14. Plaintiff reported directly to the President/CEO/Owner, Charles "Chuck" Dicks, Jr., and to the Office Manager, Patrick McDonough.

15. During his employment with Baggett the Plaintiff was a person with a disability, and/or perceived as having a disability, and/or having a record of a disability as he suffered from the serious medical conditions of cervical bone spurs, cervical root disorder, high blood pressure, diabetes, and lymphoma and received medical treatment for same. Plaintiff also had a history of having suffered from prostate cancer for which he continued to receive necessary routine medical screenings.

16. However, with or without reasonable accommodations Plaintiff was able to perform and did perform his job duties.

17. As set out herein, during his employment with Baggett the Plaintiff suffered from serious medical conditions for which he also requested medical leave.

18. Plaintiff's supervision was aware of his disabilities/medical conditions.

19. On or about March 4, 2020, Plaintiff was diagnosed with cervical bone spurs, cervical root disorder, and high blood pressure. He received medical treatment/medication for same.

20. At that time, Plaintiff informed McDonough of his diagnoses.

21. In mid-March 2020 Dicks informed employees, including Plaintiff, that if they had a fever to stay home due to the Covid-19 pandemic and that anyone who came to work with a fever would be fired.

22. On or about March 24, 2020, the Plaintiff began experiencing fever, fatigue, weakness, and severe stomach upset. Per company directive, the Plaintiff stayed home and alerted Patrick McDonough about his symptoms and that he would come in after he got some rest. Patrick instructed Plaintiff to stay home because of the virus and everything that was going on.

23. Plaintiff began experiencing night fevers at this time which continued through April 12, 2020, and beyond. Plaintiff continued to keep Patrick McDonough informed of his ongoing medical symptoms, tests, appointments, and conditions throughout this time.

24. While out on approved leave, the Plaintiff continued to run a fever and was unable to return to work. During this time the Plaintiff was also experiencing dizziness, hand tremors/lack of coordination, lightheadedness, fatigue, confusion, vision issues, stomach pains, and muscle aches which prevented him from working.

25. On March 25, 2020, Plaintiff emailed McDonough that it had been a good idea for him to stay home because he was running a fever. Plaintiff also informed him that he was weak, light-headed, and that his blood pressure was high even with his prescription medications.

26. On or about March 26, 2020, the Plaintiff was screened for Covid-19. Plaintiff kept Patrick McDonough up to date on his medical situation and of his screening.

27. On this date Plaintiff received doctor's instructions that he was to self-quarantine for seven (7) days or for three (3) days with no fever.

28. Plaintiff provided this information to Patrick McDonough on March 26, 2020, and his absence was approved.

29. At this time the Plaintiff was also diagnosed with Type 2 diabetes .

30. On or about March 29, 2020, the Plaintiff texted McDonough that he was still running a fever and had also been diagnosed with Type 2 diabetes.

31. On or about April 1, 2020, Plaintiff explained to McDonough that while he was attempting to work from home he was having to take breaks due to his continued exhaustion.

32. On or about April 3, 2020, Plaintiff and McDonough communicated about waiting to receive the Plaintiff's Covid test results. At that time Plaintiff informed McDonough that he was still running a fever and that his regular doctor had ordered lab tests that needed to be reviewed by a cardiologist. At this time Plaintiff was informed by McDonough that he could not return to work until he had the Covid test results.

33. On or about April 7, 2020, the Plaintiff returned to his doctor and informed McDonough of this visit and medical tests. He further informed McDonough that he was still running a fever and was being referred to a cardiologist for his symptoms.

34. On or about April 8, 2020, McDonough complained to Plaintiff about having to perform extra work while Plaintiff was out on leave. Plaintiff explained to McDonough that he could not work from home as he was feeling even worse than he had been before.

35. On or about April 9, 2020, McDonough complained to Plaintiff about not working while he was out sick, stated that no one else in the company was sick as much as Plaintiff, and that Plaintiff was the only one in the company to be sick during the pandemic.

36. Plaintiff's general doctor could not determine the cause of his symptoms and Plaintiff was referred to a cardiologist and a neurologist. After multiple medical tests it was determined that Plaintiff had bone lesions and was referred to an oncologist.

37. Following a bone marrow biopsy the Plaintiff was diagnosed with lymphoma.

38. On or about April 10, 2020, Plaintiff received negative Covid-19 screening results along with a release to return to work from his quarantine as of April 13, 2020.

39. Plaintiff returned to work on April 13, 2020, although still suffering from symptoms including exhaustion, dizziness, shooting pains, and involuntary hand tremors.

40. Upon returning to work Plaintiff informed McDonough that he was still experiencing exhaustion, dizziness, lightheadedness, weakness, and several neurological issues.

41. At this time Plaintiff also had a lengthy discussion with Patrick McDonough in person about everything he had been going through physically and medically, about his referrals to both cardiologist and neurologist specialists, and that the Plaintiff may need an accommodation of altering his work schedule as he was still suffering from his symptoms.

42. At no time did anyone with the company advise Plaintiff of his rights under the FMLA or engage in any form of disability accommodation discussions or interactive process with

Plaintiff.

43. Two days later, on April 15, 2020, Plaintiff took a late lunch in order to meet a window contractor at his home and then go to his doctor's office to have blood drawn for a PSA screen. Plaintiff had suffered from prostate cancer approximately five (5) years previously and this was a routine medical scan to monitor his PSA levels.

44. Plaintiff told Patrick McDonough about his need to take a late lunch and the reasons for doing so. McDonough and Plaintiff then had a discussion about why Plaintiff needed a PSA screen with the Plaintiff explaining that he had previously had prostate cancer and still needed to continue to monitor his PSA levels.

45. The last conversation the Plaintiff had with McDonough before his termination a few hours later was about the Plaintiff's history of cancer and his need for continued cancer screenings.

46. Plaintiff took his late lunch and following his PSA screening appointment returned to work where he was met by Patrick McDonough and Allan Crow, CFO.

47. McDonough then informed Plaintiff that he had been terminated.

48. Plaintiff had no disciplines, warnings, or counselings leading up to this sudden termination.

49. Plaintiff was then escorted off the company premises.

50. Dicks had a reputation at the company for terminating "sick" employees once the company had started a self-insurance program in order to cut down on funds for medical bills as Dicks considered these payments to be "his" money.

51. Plaintiff was personally aware of at least two employees who were terminated in 2019 and 2020 at the order of Dicks once Dicks found out the company would be potentially incurring covered medical expenses due to critical and/or cancer related health conditions.

52. Additionally, during a March 2020 office meeting Mr. Dicks openly expressed his displeasure that a field superintendent, Malcolm Warren, had kept an ill employee, Darryl Doggett, on the job because it had cost him [Mr. Dicks] money. Mr. Dicks then stated that if anyone ever knew of a similar situation happening again and did not tell him that they would be fired.

53. Plaintiff's supervision was aware of his disabilities/serious medical conditions and of his ongoing treatment for same.

54. Plaintiff advised his supervision of his need for medical leave in relation to his serious health conditions.

55. Plaintiff advised his supervision of his potential need for a reasonable job accommodation for his disability.

56. Plaintiff was discriminated against on the basis of his disability, a perception of a disability, and/or history of a disability by being denied reasonable accommodations and by being subjected to unwarranted termination. This conduct was willful, malicious, and in wanton disregard of his federally protected rights.

57. Plaintiff has also been unlawfully retaliated against in relation to his federally protected rights under the FMLA by the Defendant's unlawful termination of his employment.

58. The Defendant also interfered with the Plaintiff's federally protected rights under the FMLA by the Defendant's failure to provide him with FMLA leave and by the unlawful termination of his employment

59. The defendant's unlawful actions against the Plaintiff, as set out above, were not made in good faith, nor did the defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiff's federally protected rights under the FMLA.

60. The Defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

61. As the result of the Defendant's conduct the Plaintiff was deprived of income and other employment benefits due him. He also suffered embarrassment, humiliation, inconvenience, and mental distress.

62. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory, liquidated and punitive damages is his only means of securing adequate relief.

63. Plaintiff is suffering and will continue to suffer irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V. CAUSES OF ACTION

### COUNT I –DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

64. Plaintiff realleges and incorporates by reference paragraphs 5 through 63 above with the same force and effect as if fully set out in specific detail hereinbelow.

65. Plaintiff is a qualified individual under the ADA because of his known disability, and/or perceived disability, and/or history of a being a person with a disability.

66. The Plaintiff is a person with a disability, has a history of disability and/or is perceived as disabled pursuant to 42 U.S.C. § 12102, and 29 U.S.C. § 706.

67. Despite the Plaintiff's disability, with or without reasonable accommodations, the Plaintiff was qualified for and able to perform the essential functions of his job with the Defendant.

68. Plaintiff made known to his supervision the need for a reasonable accommodation due to his disability.

69. Plaintiff was subjected to unlawful discrimination by the Defendant based on his disability and/or perceived disability and/or history of a disability by failing to engage in the ADA interactive process, by denying him reasonable accommodations, and by terminating his employment.

70. At the time of this unlawful activity the defendant perceived the Plaintiff as having a disability, and/or had knowledge that the Plaintiff suffered from an actual disability, and/or had a history of a disability.

71. Defendant, by its discriminatory treatment of the Plaintiff has intentionally, willfully, with deliberate indifference and without justification deprived Plaintiff of his federally protected rights, as described herein.  This deprivation violates Plaintiff's rights under the Americans with Disabilities Act.

72. The Plaintiff is now suffering and will continue to suffer irreparable injury from The Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT II – INTERFERENCE IN VIOLATION OF
## THE FAMILY MEDICAL LEAVE ACT OF 1993

73. Plaintiff realleges and incorporates by reference paragraphs 5 through 63 above with the same force and effect as if fully set out in specific detail hereinbelow.

74. As set forth herein, Plaintiff was an eligible employee under the FMLA in that he worked for more than 12 months and had worked more than 1250 hours of service within the

preceding 12 months and had worked at a location where at least 50 employees were employed.

75. As a result of his serious medical conditions, as set out above, the Plaintiff was eligible for federally protected medical leave from the Defendant.

76. As a result of the Plaintiff's serious medical condition, as set out above, Plaintiff made known to the Defendant his need to take medical leave.

77. The Defendant thereafter interfered with the Plaintiff's substantive rights under the Act by failing to provide him with necessary FMLA leave materials, failing to provide him with FMLA leave, and by terminating his employment.

78. The Defendant acted intentionally, maliciously, and with reckless indifference against Plaintiff, in the terms, conditions, and benefits of his employment in violation of the FMLA.

79. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

80. The Defendant's unlawful actions against the Plaintiff, as set out above, were not made in good faith, nor did the Defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiff's federally protected rights.

81. The Plaintiff seeks to redress the wrongs alleged herein under the FMLA for lost wages (plus interest), lost benefits (plus interest), liquidated damages, an injunction and a declaratory judgment.

### COUNT III – RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993

82. Plaintiff realleges and incorporates by reference paragraphs 5 through 63 above with the same force and effect as if fully set out in specific detail hereinbelow.

83. As set forth herein, Plaintiff was an eligible employee under the FMLA in that he worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed.

84. As a result of his serious medical conditions, as set out above, the Plaintiff was eligible for federally protected medical leave from the Defendant.

85. As a result of the Plaintiff's serious medical condition, as set out above, Plaintiff made known to the Defendant his need to take medical leave.

86. The Defendant retaliated against the Plaintiff for his protected activities under the FMLA by failing to provide him with necessary FMLA leave materials, failing to provide him with FMLA leave, and by terminating his employment.

87. The Defendant acted intentionally, maliciously, and with reckless indifference against Plaintiff, in the terms, conditions, and benefits of his employment in violation of the FMLA.

88. The Plaintiff is now suffering and will continue to suffer irreparable injury from The Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

89. The Defendant's unlawful actions against the Plaintiff, as set out above, were not made in good faith, nor did the Defendants have any reasonable grounds for believing that such acts were not a violation of the Plaintiff's federally protected rights.

90. The Plaintiff seeks to redress the wrongs alleged herein under the FMLA for lost wages (plus interest), lost benefits (plus interest), liquidated damages, an injunction and a declaratory judgment.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff, as secured by the Americans with Disabilities Act, and as secured by the Family and Medical Leave Act of 1993;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act, and the Family and Medical Leave Act of 1993;

3. Grant the Plaintiff an order requiring the Defendants to make him whole by awarding him reinstatement into the full-time position(s) he would have occupied in the absence of the unlawful acts by the Defendant with the same seniority, leave and other benefits of the position (or front pay), and back pay (with interest);

4. Grant Plaintiff a preliminary and permanent injunction pursuant to 29 U.S.C. §2617(1)(B) directing the Defendant to reinstate all of Plaintiff's employment benefits, including but not limited to his health insurance and retirement benefits, retroactive to the date of their cessation;

5. Grant plaintiff a declaratory judgment against the Defendant that his termination violated the FMLA and ADA;

6. Enter a judgment pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(II) against the Defendant and in favor of the Plaintiff for the monetary losses Plaintiff sustained as a direct result of the

defendant's termination of Plaintiff in violation of the FMLA;

  7. Grant Plaintiff applicable compensatory damages, punitive damages (ADA), liquidated damages (FMLA), and/or nominal damages, plus interest;

  8. Grant Plaintiff his attorney's fees and costs; and

  9. Grant Plaintiff such other relief as justice requires.

          Respectfully submitted,

          s/ Temple D. Trueblood
          Temple D. Trueblood (TRUET0355)
          Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500

CO-COUNSEL:
Henry Brewster (BREWH7737)
Henry Brewster, LLC
205 N. Conception Street
Mobile, Alabama 36603
(251) 338-0630


**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**
          s/ Temple D. Trueblood
          OF COUNSEL

**Plaintiff requests this Honorable Court to serve via certified mail upon each of the named Defendants the following: Summons, Complaint.**

**Defendant's Addresses:**
Rob't J. Baggett, Inc.
c/o C.T. Corporation System (Registered Agent)
2 North Jackson Street, Suite 605
Montgomery, AL 36104

                                              s/ Temple D. Trueblood
                                              OF COUNSEL